UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------X
ASHRAF SAID,

                                                **MEMORANDUM & ORDER**
                   Plaintiff,                          08 CV 3067 (RJD) (JO)

       -against-

SBS ELECTRONICS, INC., et al,

                  Defendants.
-----------------------------------------------------------------X

DEARIE, Chief Judge.

On July 16, 2009, the Court granted plaintiff Ashraf Said's motion for a default judgment against defendants SBS Electronics, Inc. ("SBS") and Seth Seigel, and referred the matter to Magistrate Judge James Orenstein for a damages determination. On February 24, 2010, Judge Orenstein recommended that the Court enter judgment against SBS and Seigel in the total amount of $203,643.57, with liability for the full amount being joint and several as between SBS and Seigel, and liability for $85,000 of that amount being joint and several among SBS, Seigel, and two settling defendants, Doctor TV, Inc. ("DTV"), and DTV's CEO, Mark Dornhard. The Court has reviewed Judge Orenstein's Report and Recommendation and for the reasons set forth below adopts it with the following modifications.

## BACKGROUND

The facts, drawn from the uncontested allegations contained in Said's amended complaint and his filings in support of his motion for default judgment, are summarized in Judge Orenstein's Report and Recommendation.

Briefly, Said commenced this action against SBS, Seigel, DTV, and Dornhard, alleging

1

violations of the Fair Labor Standards Act and the New York State Labor Law. Said worked as a mover for DTV from August 2005 until July 3, 2008. He worked between 13 and 14 hours a day, 5 or 6 days a week, and was paid $450.00 a week. He did not receive overtime compensation. He alleges that DTV and Dornhard were his "employers" as defined under the FLSA and that they are therefore jointly and severally liable for all wage violations from August 2005 to July 3, 2008.

Said also alleges that in October 2007 Dornhard contemplated entering DTV into a licensing agreement with SBS. In a declaration filed in support of Said's motion for a default judgment against SBS and Seigel, Dornhard states that he ceded control of DTV to SBS in contemplation of the licensing agreement being reached. Specifically, Dornhard states that SBS became responsible for managing DTV's day-to-day operations, including directing and supervising DTV's employees and managing its expenses, and started doing business as DTV.

Said alleges that as a result of SBS taking control of DTV all four defendants were his "employers" for purposes of FLSA as of October 1, 2007, and that they are jointly and severally liable to him for wage violations from that date forward. Said also alleges that as a result of SBS taking control of DTV in October 2007, the two corporations effectively merged, and SBS, as the successor corporation to DTV, assumed responsibility for DTV's alleged wage violations prior to October 1, 2007.

Dornhard and DTV settled with Said for $85,000. Seigel and SBS did not answer or otherwise respond to the amended complaint and on July 16, 2009, the Court granted Said's motion for a default judgment against them. On February 24, 2010, Judge Orenstein issued a report recommending that the Court enter judgment against SBS and Seigel in the total amount

of $203,643.57, with liability for the full amount being joint and several as between SBS and Seigel, and liability for $85,000 -- i.e., the settlement amount between Said and Dornhard and DTV -- being joint and several among all four defendants.

The parties' objections to Judge Orenstein's Report and Recommendation were due March 15, 2010. No objections were filed by Said, Dornhard, or DTV. On March 11, 2010, Seigel, who had not appeared at any point in the action, filed a two-paragraph letter, which states:

> I object to this report. There are unrue [sic] statements about sbs electronics. Doctor TV and sbs are two independent companies. Doctor TV closed. I started sbs 11/2007. I never took control of Doctor TV.

Because the Court considers Said's letter to be nothing more than a conclusory and general objection, it reviews Judge Orenstein's Report and Recommendation for clear error only. See Kirk v. Burge, 646 F. Supp. 2d 534, 538 (S.D.N.Y. 2009) ("The Court is required to make a *de novo* determination as to those aspects of the Report to which specific objections are made. . . . However, to the extent that the party makes only conclusory or general objections, or simply reiterates the original arguments, the Court will review the Report strictly for clear error") (internal citations omitted); see also 28 U.S.C. § 636(b)(1)(C) (district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge").

DISCUSSION

I.  Default Judgment

When a defendant defaults the court must accept as true all well-pleaded allegations in the complaint, except those pertaining to the amount of damages. See Report and Recommendation at 4 (citing Fed. R. Civ. P. 8(b)(6); Finkel v. Romanowicz, 577 F.3d 79, 83 n.6

3

(2d Cir. 2009) (internal citation omitted)). As Judge Orenstein correctly observed, a defendant's failure to answer or otherwise respond to the complaint is not sufficient to establish liability on its claims; rather, plaintiff bears the burden of demonstrating that the uncontroverted allegations, without more, establish that defendants are liable on each claim. Id. (citing cases). If the complaint suffices to establish liability, the court must then conduct an inquiry sufficient to establish damages to a reasonable certainty. Id. (citing cases).

Judge Orenstein concluded that the allegations in Said's complaint (1) established that SBS and Seigel were Said's "employer" as of October 1, 2007, and (2) established that DTV and SBS had effectively merged and that as a result SBS and Seigel assumed successor liability for DTV's alleged pre-October 1, 2007 wage violations. He recommended that the Court enter judgment against SBS and Seigel in the total amount of $203,643.57 (consisting of $4,500 in unpaid wages; $93,673.13 in unpaid overtime; $64,094.41 in liquidated damages; $5,669.30 in "spread of hours" wages; $29,017.85 in prejudgment interest; and $6,338.88 in attorneys' fees and $350 in costs).

The Court finds no clear error in Judge Orenstein's conclusion that the allegations in Said's complaint establish that SBS and Seigel were Said's "employers" for purposes of the FLSA and that they are liable for alleged wage violations that occurred on October 1, 2007, and thereafter. Nor does the Court find clear error in Judge Orenstein's calculation of the amount of total damages suffered by Said or in his calculation of attorneys' fees and costs. Those findings are adopted in their entirety.

The Court, however, cannot agree that the allegations in the complaint are sufficient to establish that SBS and Seigel assumed successor liability for DTV's alleged pre-October 1, 2007

4

wage violations. Accordingly, the matter is remanded to Judge Orenstein to re-calculate the amount of the default judgment to be entered against SBS and Seigel.

II.     Successor Liability

Typically, a corporation that acquires the assets of another corporation does not inherit the seller's liabilities. However, under New York law, a buyer of a corporation's assets will be liable for that corporation's liabilities if the buyer expressly or impliedly assumes the predecessor's liabilities, there was a consolidation or merger of seller and buyer, (i.e., a de facto merger), the buyer is a mere continuation of the seller, or the transaction was entered into fraudulently to escape the seller's obligations. See New York v. Nat'l Serv. Indus. Inc., 460 F.3d 201, 209 (2d Cir. 2006).

Because Said argues only that the de facto merger exception applies the Court does not address any of the other exceptions. "A *de facto* merger occurs where one corporation is absorbed by another, but without compliance with the statutory requirements for a merger." Desclafani v. Pave-Mark Corp., 2008 WL 3914881, at *4 (S.D.N.Y. Aug. 22, 2008) (quoting Arnold Graphics Indus., Inc. v. Indep. Agent Ctr., Inc., 775 F.2d 38, 42 (2d Cir. 1985). "The purpose of the doctrine is to avoid the patent injustice which might befall a party simply because a merger has been called something else." Cargo Partner AG v. Albatrans, Inc., 352 F.3d 41, 46 (2d Cir. 2003) (internal citations, quotation marks, and brackets omitted).

Courts consider several factors in determining whether a de facto merger has occurred including whether there has been continuity of ownership, continuity of management, the dissolution of the selling company, and the assumption of liabilities by the purchaser. See Nat'l Serv. Indus., Inc., 460 F.3d at 210. While Judge Orenstein correctly noted that it remains an

open question in this circuit as to whether all four factors must be present to support a finding of a de facto merger, see Societe Anonyme Dauphitex v. Schoenfelder Corp., 2007 WL 3253592, at *3 (S.D.N.Y. Nov. 2, 2007), the Second Circuit has held that the "first factor -- continuity of ownership -- is essential to a finding of a *de facto* merger." Desclafani, 2008 WL 3914881, at *4 (citing Nat'l Serv. Indus., Inc., 460 F.3d at 212).

"The 'continuity of ownership' factor looks to whether shareholders of the predecessor become, at the time of the sale of the assets, shareholders of the successors [sic] corporation." Id. (internal citation omitted). The continuity of ownership requirement is "designed to identify situations where the shareholders of a seller corporation retain some ownership interest in their assets after cleansing those assets of liability." Nat'l Serv. Indus., Inc., 460 F.3d at 211 (internal citation and quotation marks omitted). Absent a showing of a continuity of ownership, the de facto merger exception does not apply. See Desclafani, 2008 WL 3914881, at *4-5 (collecting cases).

Said's allegations are insufficient to establish that there was continuity of ownership when SBS took control of DTV. While Dornhard declares that DTV and SBS contemplated a licensing agreement in October 2007, there is no allegation as to the specific form of the transaction that was ultimately effectuated and the complaint is devoid of any allegation that DTV's owners became owners in SBS or any new entity that may have been formed. Said's failure to plead continuity of ownership is a fatal defect; accordingly, the Court does not adopt Judge Orenstein's recommendation that the Court enter default judgment against SBS and Seigel for DTV's pre-October 1, 2007 wage violations based on a theory of successor liability. See Cargo Partner AG, 352 F.3d at 47 (affirming dismissal of complaint seeking to impose successor

6

liability on acquiring corporation where complaint failed to sufficiently allege continuity of ownership); see also Desclafani, 2008 WL 3914881, at *4-5 (collecting cases).[1]

In addition, even if the Court were to adopt Judge Orenstein's recommendation that judgment be entered against SBS for DTV's alleged pre-October 1, 2007 wage violations, judgment could not be entered against Seigel in his individual capacity for those violations. While it is unclear from the complaint exactly what Seigel's role is at SBS, the Court assumes for purposes of this decision that he is a shareholder of SBS. The Second Circuit has made clear that incorporation is a "legitimate means to avoid personal liability," and that "'under New York law, courts must be extremely reluctant to pierce the corporate veil'" in finding a shareholder liable for the wrongdoings of his corporation. Feitshans v. Kahn, 2007 WL 2438411, at *3 (S.D.N.Y. Aug. 24, 2007) (quoting United States v. Funds Held ex rel. Wetterer, 210 F.3d 96, 106 (2d Cir. 2000)). Thus, a shareholder cannot be held liable for his corporation's actions absent allegations that he: "(1) exercised complete domination and control over the corporation, and (2) used such domination and control to commit a fraud or wrong against the plaintiff which resulted in injury." Robles v. Copstat Sec., Inc., 2009 WL 4403188, at *2 (S.D.N.Y. Dec. 2, 2009); see also Feitshans, 2007 WL 2438411, at *3 (corporate form should be disregarded "only where plaintiffs satisfy a 'heavy burden' in showing that the corporation is being 'used by an individual to accomplish his own and not the corporation's business'") (quoting William Passalacqua Builders, Inc. v. Resnick Developers S., Inc., 933 F.2d 131, 138 (2d Cir. 1991)).

---

[1] To be sure, plaintiffs often lack specific information regarding a corporate transaction to sufficiently allege continuity of ownership at the pleading stage and they should not be penalized when a defendant who possesses such relevant information defaults. Here, given that Dornhard submitted a declaration in support of Said's motion for default judgment against SBS and Seigel, Said's failure to allege specific facts regarding continuity of ownership cannot be attributed to a lack of access to individuals with pertinent information.

The only factual allegations in the complaint concerning Seigel are that he is a New York resident, that he is responsible for managing the business affairs of SBS and DTV, and that he was responsible for supervising and paying Said. These allegations are wholly insufficient to pierce the corporate veil to hold Seigel liable in his individual capacity for SBS's liabilities. See Bravado Intern. Group Merchandising Services, Inc. v. Ninna, Inc., 655 F. Supp. 2d 177, 197 (E.D.N.Y. 2009). Finally, while Seigel was properly found to be Said's "employer" under the FLSA for wage violations that occurred upon SBS taking control of DTV on October 1, 2007, there are no allegations in the complaint that would give rise to any inference that he was Said's "employer" prior to SBS taking control of DTV.

## CONCLUSION

For the foregoing reasons, the Court adopts the recommendations in Judge Orenstein's Report and Recommendation except for his recommendation that the Court enter judgment against SBS and Seigel for DTV's alleged wage violations prior to October 1, 2007. The matter is referred to Judge Orenstein to re-calculate the amount of the default judgment to be entered against SBS and Seigel consistent with this opinion.

**SO ORDERED.**

Dated: Brooklyn, New York
March 30, 2009

s/ Judge Raymond J. Dearie

RAYMOND J. DEARIE
United States District Judge